Case 5:10-cv-00072-SGW -JGW  Document 32  Filed 04/21/11  Page 1 of 9

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 21 2011
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| WILLIAM R. COUCH, ) | |
| ) | Civil Action No. 5:10-cv-00072 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| JOHN M. JABE, et al., ) | |
| ) | By: Samuel G. Wilson |
| Defendants. ) | United States District Judge |

This is an action by plaintiff William Couch under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.*, alleging that defendants John M. Jabe, the Deputy Director of the Virginia Department of Corrections ("VDOC"), Daniel A. Braxton, the Warden of Augusta Correctional Center ("Augusta"), and Steve Hollar, the Assistant Warden of Augusta, violated his rights by enforcing a VDOC grooming policy, Operating Procedure 864.1 ("OP 864.1" or the "grooming policy"). The challenged grooming policy prohibits inmates from wearing long hair and beards except for medical reasons, but does not mandate forcible cutting or shaving, and instead requires noncompliant inmates to live in segregated housing. According to the VDOC, the challenged grooming policy promotes institutional security and discipline, and assists in the suppression of gang activity. By prohibiting him from growing a beard, Couch, a Sunni Muslim, contends the defendants have unduly restricted his exercise of his religious beliefs under the Free Exercise Clause and RLUIPA, and he has requested declarative and injunctive relief, as well as damages. The matter is before the court on the parties' cross-motions for summary judgment. In moving for summary judgment, the defendants rely on circuit precedent sustaining the determination by the United States District Court for the Eastern District Virginia that the challenged policy

constitutes the least restrictive means of addressing compelling governmental interests. Couch counters that he is seeking to grow only a 1/8 inch beard and that a beard that short would not implicate the concerns the VDOC has identified and, consequently, permitting him to remain in the general population and wear such a beard is the least restrictive alternative. The court, giving due deference to the experience and expertise of prison jail administrators, finds that Couch's proposal does not eliminate all of the compelling interests advanced by the VDOC, and enters summary judgment for defendants.

I.

The VDOC's grooming policy prohibits an inmate from wearing a beard or goatee unless he applies for and receives an annual medical exemption from his facility's "medical authority" based upon a finding that he "has a medical condition that is aggravated by shaving."[1] The policy requires that an inmate without a medical exemption comply with the grooming policy's requirements upon intake or transfer into a VDOC facility, regardless of the inmate's security level. The stated purpose of this policy is to "facilitate the identification of offenders and to promote safety, security, and sanitation." (OP 864.1.) According to Jabe, the Deputy Director of Operations for the VDOC: "Hair styles and beards . . . could conceal contraband; promote identification with gangs; create a health, hygiene or sanitation hazard; or could significantly compromise the ability to identify an offender." (Jabe Aff. ¶ 4.) Jabe continues, "Prisoners with long hair and beards can rapidly change their appearance so as to compromise the need for rapid identification." (Id. ¶ 6.) He notes that even inside the prison, positive, quick identification of inmates facilitates the orderly operation of each facility. (Id.) Thus, according to Jabe, the

---

[1] This grooming policy was recently updated in July 2010, but neither party has indicated that the former policy's relevant provisions differed in any material respect.

2

grooming policy's restrictions reduce a prisoner's chance of escape and ability to confuse in-prison identification. (Id. ¶ 8.)

A noncompliant inmate is first directed to comply, and if he still refuses, is charged with noncompliance and placed in pre-hearing detention. If convicted of the violation at the hearing, the inmate is transferred to segregation where he continues to earn good time credits. An inmate moved to segregation solely by reason of refusing to comply still earns good time credits, unless he commits other unrelated, disqualifying disciplinary offenses. An inmate who violates the grooming standards but has exhibited no other behavioral problem and actively participates in facility programming is transferred to a specialized segregation unit, "Phase II" of the "graduated privilege program," which is currently located at the Keen Mountain Correctional Center. (Def. Supp. to Mot. ¶ 4.) Inmates in the Phase II unit gain additional privileges not available to other segregated inmates, and the privileges in this unit somewhat resemble the privileges held by inmates in the general population, including the privilege of having personal property, one hour of "pod-time," and four hours of programming each day. But even though the privileges afforded to inmates are greater than those housed in segregation for other reasons, they are not the equivalent of those available to inmates in the general population. For example, Phase II inmates have less expansive facilities, fewer personal property privileges, fewer programs, and considerably less recreational outdoor time.

Couch is serving multiple life sentences, plus 37 years, for multiple counts of rape, robbery, and statutory burglary. Couch claims that he is an observant Sunni Muslim, and that his religious beliefs require that he grow a beard. Couch maintained a beard from his initial incarceration in 1990 until the VDOC instituted OP 864.1 in 1999, when he apparently shaved it in order to comply with the policy.

3

On December 28, 2009 Couch, who has been incarcerated at Augusta since 2008, filed an informal complaint noting that he "recently [had] become convinced that [his] Islamic faith required [him] to wear a beard" and that he had been instructed to shave. An official at Augusta responded that the grooming policy only had a medical exception. Couch then filed a grievance complaining that he was not permitted "to grow even a 1/8 inch beard," despite the fact that a beard of that length implicates none of the VDOC's security concerns because an inmate cannot conceal contraband in it or "significantly" alter his appearance by shaving. The Warden's designee denied the grievance because OP 864.1 only allows inmates with medical exemptions to grow beards. Couch then filed a Level II grievance, and the VDOC's Regional Director denied that appeal, finding that the Warden's designee had correctly applied OP 864.1

## II.

Couch alleges that by not permitting him to grow a short beard pursuant to his religious beliefs, the defendants have violated RLUIPA. The court finds, as the Fourth Circuit has previously found under similar circumstances, that the VDOC's grooming policy furthers compelling penological interests and by transferring a noncompliant inmate to segregation where other noncompliant inmates are housed rather than forcibly shaving him, VDOC has chosen the least restrictive means available to further those interests. For these reasons, the court finds that the grooming policy withstands scrutiny under RLUIPA. Accordingly, the court enters summary judgment for defendants as to that claim.[2]

---

[2] Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The party moving for summary judgment bears the burden of informing the court of the basis for its motion, and identifying those parts of the record which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In reviewing a summary judgment motion under Rule 56, the court "must draw all justifiable inferences in favor of the nonmoving party." United States v. Carolina Transformer Co., 978 F.2d 832, 835 (4th Cir. 1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

4

RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," 42 U.S.C. § 2000cc-1(a),[3] unless it demonstrates that, the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." Id.; Lovelace v. Lee, 472 F.3d 174, 189 (4th Cir. 2006). However, RLUIPA was not intended to "elevate accommodation of religious observances over an institution's need to maintain order and safety." Cutter v. Wilkinson, 544 U.S. 709, 722 (2005)); Lovelace, 472 F.3d at 190. The Supreme Court has noted that its "decisions indicate that an accommodation must be measured so that it does not override other significant interests" and thereby run afoul of the Establishment Clause. Cutter, 544 U.S. at 722. Congress "anticipated that courts would apply the Act's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of cost and limited resources." Id. Therefore, in analyzing whether a particular regulation is the least restrictive means of furthering the government's compelling security interest, the reviewing court must avoid "substituting its judgment in place of the experience and expertise of prison officials." Hoevenaar v. Lazaroff, 422 F.3d 366, 370 (6th Cir. 2006) ("In conducting an analysis of whether the regulation in issue was the least restrictive means of furthering the government's compelling security interest, the district court did just what the Supreme Court *and* Congress have warned against: substituting its judgment in place of the experience and expertise of prison officials."). Here, the court views the challenged regulation

---

[3] For purposes of this motion, the court assumes that the grooming policy substantially burdens Couch's religious beliefs. See Warsoldier v. Woodford, 418 F.3d 989, 995-96 (9th Cir. 2005) (finding the California Department of Corrections' grooming policy substantially burdened the exercise of a plaintiff's religious beliefs when it imposed restrictions on non-complying inmates' recreation time, telephone use, and other privileges held by the general prison population).

5

with these precepts in mind, and finds, as has the Fourth Circuit, that it passes scrutiny under RLUIPA.

McRae v. Johnson, 261 Fed. App'x 554, 558 (4th Cir. 2008), though unpublished and nonbinding, is instructive nonetheless. In McRae, five inmates challenged VDOC's grooming policies and procedures under RLUIPA. At the time, the grooming policy contained the same prohibition of beards and goatees, except for medical reasons. Force was not used to shave an inmate or cut his hair. Instead noncompliant inmates were transferred into segregation where they could be more closely monitored. Correctional officials contended, in part, that "the grooming policy serve[d] the interest of promoting security by maintaining a fairly consistent appearance for each particular inmate" for identification purposes, prevented the secreting of weapons and other contraband, and promoted sanitation and hygiene. McRae v. Johnson, 3:03-cv-164 (E.D. Va. Aug. 16, 2006). The prisoners argued that transferring prisoners to a separate, non-punitive living space where good time earning credit levels were unaffected would be a less restrictive way to further the government's compelling interests in the policy. The district court upheld the policy against the inmates' RLUIPA challenge, finding that it was the least restrictive means of promoting the compelling governmental interests of "prison security, the health and safety of inmates and prison staff, and the easy identification of prisoners." Id. The Fourth Circuit affirmed, agreeing that these considerations constituted compelling governmental interests and describing the policy's requirement that offending prisoners live in a segregated unit as "quite reasonabl[e]." Id. at 559. The court noted that the expert testimony in the case, as well as the relevant case law, established "far beyond any reasonable debate that the business of running prisons is a dangerous and exceedingly difficult task, one which cannot be successfully done without . . . limiting inmates' abilities to quickly change their physical appearance." Id. at

6

558. The court further cited the administrative burdens that the prisoners' suggested alternatives would entail, particularly because there would be little incentive for prisoners to comply with the policy if they were to obtain transfers to an entirely non-punitive, segregated unit, and that if a great number of inmates refused to comply, their sheer number would be so great that prison guards could no longer closely monitor them. McRae, 261 Fed. App'x at 559.

The Fourth Circuit is not the only court of appeals to uphold a similar grooming policy. In DeMoss v. Crain, 2011 WL 893733 (5th Cir. Mar. 2, 2011), the Fifth Circuit found that the grooming policy at issue furthered compelling interests in ensuring the rapid identification of inmates, preventing the concealment of contraband, and reducing the prison's operational costs. Id. at *6. Further, the court found that the ban on beards of all lengths was the least restrictive means of furthering these interests due to the increase in administrative costs any of the inmate's proposed alternatives entailed. Id.

Couch contends here that a 1/8 inch beard does not implicate security concerns like the longer beards and hair that prompted the court in McRae to conclude that the VDOC had selected the least restrictive alternative as RLUIPA requires. This argument is specious. Jabe has identified at least two remaining concerns: an inmate's ability to alter his appearance or to identify with a gang.[4] Though it is quite clear that an inmate cannot secret weapons or contraband in a 1/8 inch beard, it is not clear that an inmate cannot change his appearance by shaving it, or identify himself as the member of a gang by growing it.[5] It is not this court's duty

---

[4] In its supplemental briefing, the VDOC also noted the difficulty of determining the true nature of an inmate's religious beliefs as an additional cost and burden associated with managing a personal grooming policy that would accommodate inmates who, for religious reasons, seek to grow shorter beards. In reply, Couch cites the VDOC's self-described ability to successfully accommodate the administrative burdens and costs associated with managing a grooming policy with a religious exemption. Because the court finds that the VDOC's security concerns sufficiently justify its grooming policy, the court sees no reason to address the VDOC's additional concerns.

[5] Couch notes the court's passing observation in Ragland v. Angelone, 420 F. Supp. 2d 507 (W.D. Va. 2006), that shaving a 1/8 inch beard would be unlikely to significantly alter an inmate's appearance. Nevertheless, Ragland

7

under RLUIPA to select on its own the least restrictive alternative but rather to defer, within reason, to the judgments of prison administrators. Consequently, in analyzing whether a particular regulation is the least restrictive means of furthering the government's compelling security interest, the reviewing court must avoid "substituting its judgment in place of the experience and expertise of prison officials." Hoevenaar, 422 F.3d at 370. Yet, that is precisely what Couch would have this court do here.[6]

For these reasons, the court finds little reason to stray from the persuasive opinion of the Fourth Circuit which has found that the challenged grooming policy serves compelling governmental interests by the least restrictive means by transferring inmates who choose not to follow this policy to the segregation facility rather than forcibly shaving them. Accordingly, the court finds that the policy withstands scrutiny under RLUIPA, and grants the defendants' motion for summary judgment as to that claim.[7]

### III.

Couch also has challenged the grooming policy on First Amendment grounds. In comparison to RLUIPA's strict scrutiny standard, the court applies a "rational means" test when evaluating First Amendment Free Exercise claims. Under this test, the government bears the

---

upheld an earlier version of the VDOC grooming policy at issue in this case, finding compelling interests in, among other things, preventing prisoners from rapidly changing their appearance through the use of beards or altered hairstyles. Ragland, 420 F. Supp. 2d at 516. Here, the court finds that the determination of what length of beard is capable of significantly altering an inmate's appearance is one best made by prison administrators, not courts. See Cutter, 544 U.S. at 723.

[6] In Smith v. Ozmint, 578 F.3d 246 (4th Cir. 2009), the Fourth Circuit found that a grooming policy that allowed prison officials to forcibly shave an inmates' hair who refused to comply with that policy imposed a substantial burden on a particular inmate's religious exercise, and that prison officials had failed to demonstrate that the policy was the least restrictive means of furthering several compelling government interests. Id. at 251-54. However, after hearing additional evidence on remand, the district court again held that the policy constituted the least restrictive means of furthering the government's compelling interests, 2010 WL 1071388, at *12-13 (D.S.C. Jan. 25, 2010), a decision which the Fourth Circuit subsequently affirmed. 396 Fed. App'x 944 (4th Cir. 2010).

[7] The court notes that Couch's complaint also includes a claim for damages. To the extent Couch seeks damages under RLUIPA, his claim fails because RLUIPA does not provide for monetary relief against defendants in their official or individual capacities. See Rendelman v. Rouse, 569 F.3d 182, 189 n.2 (4th Cir. 2009).

burden of demonstrating only that the regulation is "reasonably related to legitimate penological interests." Hines v. S.C. Dep't of Corr., 148 F.3d 353, 358 (4th Cir. 1998) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 350-53 (1987)). This is a less demanding standard than RLUIPA. Therefore, if the grooming policy survives scrutiny under RLUIPA, it necessarily also passes muster under the First Amendment's rational means test. See Charles v. Frank, 101 Fed. App'x 634, 635 (7th Cir. 2004); see also Lovelace, 472 F.3d at 199-200 ("[T]he First Amendment affords less protection to inmate's free exercise rights than does RLUIPA."). Because the court finds that the VDOC's grooming policy satisfies RLUIPA's strict scrutiny standard, the court also finds it satisfies scrutiny under the First Amendment. Accordingly, the court grants the defendants' motion on this claim as well.[8]

## IV.

For the reasons stated above, the court grants the defendants' motion for summary judgment on all of plaintiff's claims.

**ENTER:** April 21, 2011.

UNITED STATES DISTRICT JUDGE

---

[8] Alternatively, the defendants claim Couch cannot recover damages because they are entitled to qualified immunity for their actions. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815-16 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In light of the Fourth Circuit precedent upholding the validity of the VDOC grooming policy in question, the court finds that the individual defendants did not violate clearly established law, and are thus entitled to qualified immunity as well.